IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYREE MUSIER,**<br>    **Plaintiff** : <br> : <br> : <br>    v. : <br> : <br>**MHM, INC., et al.,**<br>    **Defendants** : <br> : <br> : <br> : <br> : | No. 1:23-cv-01047 <br><br> (Judge Kane) |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983 in which pro se Plaintiff Tyree Musier ("Musier") alleges that Defendants have violated his rights under the Eighth and Fourteenth Amendments by placing him in solitary confinement and denying him drug treatment. Presently before the Court is Defendants' motion to dismiss Musier's complaint. (Doc. No. 3.) For the following reasons, the motion to dismiss will be granted and Musier's complaint will be dismissed without prejudice.

**I.   BACKGROUND**

Musier filed the complaint that initiated this case on May 1, 2023 in the Huntingdon County Court of Common Pleas. (Doc. No. 1-3.) According to the complaint, Musier has a well-documented history of substance abuse, both before and after his incarceration. (Id. at 3.) The complaint alleges that, in August 2017, while Musier was incarcerated at Huntingdon State Correctional Institution ("SCI-Huntingdon"), he was found with crushed Xanax in his possession and was given a misconduct citation for possession of contraband, which resulted in him spending thirty-four (34) days in SCI-Huntingdon's Restricted Housing Unit ("RHU"). (Id. at 4.) After exiting the RHU, Musier allegedly became the target of cell searches at least once a week from 2017 to 2022. (Id. at 5.) Musier sought drug treatment several times between 2017

and 2022, but the complaint alleges that prison staff repeatedly told him that he is not eligible for drug treatment because he is serving a life sentence. (Id.)

Sometime in 2022, prison staff allegedly found "orange strips with green markings on them" in Musier's possession. (Id.) An officer in SCI-Huntingdon, Lieutenant Corley ("Corley"), requested that Musier remain in the RHU pending the results of lab testing on the strips. (Id.) Musier allegedly suffered a panic attack due to the stress of remaining in the RHU on September 11, 2022, which resulted in him being transferred to an outside hospital for treatment. (Id.) During the hospital stay, hospital staff informed Musier that he had contracted clostridioides difficile ("C. diff."), a potentially dangerous bacterial infection. (Id.) The complaint alleges that Musier contracted C. diff. as a result of eating meals from the prison's provided meal trays. (Id. at 5–6.) Musier remained hospitalized from September 11, 2022 to September 27, 2022. (Id. at 6.)

On September 12, 2022, the orange strips purportedly tested positive for the presence of Suboxone. (Id.) Corley issued Musier a misconduct citation, but because of his hospitalization he was not served with the citation until September 28, 2022. (Id.) The matter was referred to Defendant Ellenberger ("Ellenberger"), a disciplinary hearing officer, for a hearing on September 30, 2022. (Id.) Ellenberger allegedly falsified documents to indicate that Musier pleaded guilty to the misconduct charge. (Id.) Ellenberger sentenced him to 120 days of disciplinary custody. (Id.) Halfway through this sentence, Musier submitted a request to a Program Review Committee ("PRC") in which he requested that the "PRC Defendants" give him "half-time." (Id.) The "PRC Defendants" denied this request. (Id.) Musier subsequently requested that he be placed in drug treatment, but the PRC allegedly told him that drug treatment

was not available for inmates serving life sentences and was reserved for inmates who were eligible for parole or release in the near future. (Id. at 7.)

On December 21, 2022, an officer in SCI-Huntingdon, Sergeant Chamberlain ("Chamberlain"), purportedly requested that Musier be transferred to administrative custody based on concerns that Musier was in danger from other individuals in the prison. (Id.) The "PRC Defendants" transferred Musier to administrative custody based on this request. (Id.)

Musier was transferred from SCI-Huntingdon to Fayette State Correctional Institution ("SCI-Fayette") on January 26, 2023. (Id. at 8.) He was immediately placed in SCI-Fayette's RHU. (Id.) On February 2, 2023, Musier was informed by RHU staff that he was awaiting "DEMO unit approval." (Id.) The complaint alleges that placement in the DEMO unit will result in Musier being placed in solitary confinement. (Id. at 9.)

The complaint asserts claims for violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, medical malpractice, and falsification of documents. (Id. at 10.) Musier seeks damages and injunctive relief. (Id. at 11.)

On May 22, 2023, the Court of Common Pleas conducted an in forma pauperis screening review of Musier's complaint and dismissed all claims other than Musier's Eighth Amendment deliberate indifference claim, his Fourteenth Amendment equal protection claim, and his medical malpractice claim against Defendants MHM, Inc. and Cousins. (Doc. No. 1-3.) On June 2, 2023, Defendants Pennsylvania Department of Corrections ("DOC"), Little, Rivello, Kohler, Spyker, House, Strait, McCloskey, Eberling, and Ellenberger ("DOC Defendants") were served with process. (Doc. No. 1 at 3.) DOC Defendants removed the case to the United States District

3

Court for the Middle District of Pennsylvania on June 23, 2023, and the case was assigned to the undersigned.  (Id.)

DOC Defendants moved to dismiss the complaint on June 29, 2023, and filed a brief in support of the motion on July 14, 2023.  (Doc. Nos. 3–4.)  Musier has not responded to the motion and the deadline for doing so has expired under the Local Rules.  See M.D. Pa. L.R. 7.6.  The motion is accordingly ripe for judicial resolution.

II.     LEGAL STANDARDS

   A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

4

defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).

The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  An undisputedly authentic document attached as an exhibit to a motion to dismiss by a defendant may be the basis to grant the motion to dismiss if the contents of the document contradict the plaintiff's allegations.  See Pension Benefit Guar. Corp., 998 F.2d at 1196 (noting that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" because "otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

**B.     Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

III.   DISCUSSION

   A.   Musier's Complaint

As noted above, the only claims that survived the Court of Common Pleas' screening of Musier's complaint are: (1) Musier's Eighth Amendment deliberate indifference claim; (2) Musier's Fourteenth Amendment equal protection claim; and (3) Musier's medical malpractice claim, which is asserted against Defendants MHM, Inc. and Cousins only. It appears that MHM, Inc. and Cousins may not have joined in the removal of this action from state court and accordingly have not responded to the complaint or otherwise participated in the case since it was removed.[1] The Court's analysis will accordingly proceed solely as to the deliberate indifference and equal protection claims given that the malpractice claim is asserted against MHM, Inc. and Cousins only.

Claims of deliberate indifference to a risk of harm require a plaintiff to show: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that risk; and (3) the defendant's deliberate indifference caused the plaintiff harm. See Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)), abrogated in nonrelevant part as recognized by Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020). The first element is an objective inquiry of whether the official "knowingly and unreasonably disregarded an objectively intolerable risk of harm." See Beers-Capitol v. Wetzel, 256 F.3d 120, 132 (3d Cir. 2001). The second element is

---

[1] Although all defendants must consent to remove a case to federal court pursuant to 28 U.S.C. § 1441, failure of all defendants to consent to removal is a procedural defect to removal that may be waived by a plaintiff's failure to timely move to remand the case to state court rather than a jurisdictional defect to removal that may be raised by the court sua sponte. See Balazik v. Cnty. of Dauphin, 44 F.3d 209, 213 (3d Cir. 1995). Accordingly, because Musier has not moved to remand the case to state court, any failure by MHM Inc. and Cousins to consent to removal cannot be the basis for this Court to sua sponte remand the case to state court. See id.

subjective: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."  See Bistrian, 696 F.3d at 367 (quoting Beers-Capitol, 256 F.3d at 125).

Although Musier does not specifically state the basis for his deliberate indifference claim, the Court liberally construes the complaint as asserting two possible bases for a deliberate indifference claim—Musier's placement in solitary confinement for multiple months and his C. diff. infection.  Neither is sufficient to state a deliberate indifference claim on which relief may be granted because the complaint fails to allege Defendants' personal involvement.  A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation.  See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of respondeat superior.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence.  See id.

Here, Musier alleges that he spent multiple months in solitary confinement, but states that the decision to keep him in solitary confinement was made by the "PRC Defendants," a class of defendants that Musier does not define anywhere in the complaint.  See (Doc. No. 1-2 at 6–9).  Although Musier additionally alleges that the Pennsylvania Department of Corrections ("DOC") is responsible for his placement in solitary confinement, see (id.), the DOC is not a proper defendant in a § 1983 action.  See Curtis v. Everette, 489 F.2d 516, 521 (3d Cir. 1973); see also, e.g., Foye v. Wexford Health Sources, Inc. (3d Cir. 2017) (unpublished).  Musier therefore fails to allege any proper defendants who were personally involved in the alleged violation of his civil rights under the Eighth Amendment.

Musier's complaint also fails to state a deliberate indifference claim to the extent it is based on his C. diff. infection.  The complaint alleges that Musier contracted C. diff. as a result of eating meals from prison meal trays, but he does not allege that any Defendants were aware of the meal trays being infected with C. diff.  See (Doc. No. 1-2 at 5–6).  Accordingly, Musier's deliberate indifference claim will be dismissed for failure to allege Defendants' personal involvement.

Turning to Musier's equal protection claim, the Equal Protection Clause of the Fourteenth Amendment states that no state may "deny to any person within its jurisdiction the equal protection of the laws."  See U.S. CONST. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 475 U.S. 202, 216 (1982)).  The Equal Protection Clause does not forbid classifications, but the distinctions between classes of individuals "must be rationally related to a legitimate governmental purpose."  See Stradford v. Sec'y Pa. Dep't of Corrs., 53 F.4th 67, 73 (3d Cir. 2022) (quoting Cleburne, 473 U.S. at 446).  Rational basis review does not "require specific facts to justify the government's legitimate purpose; all it asks is whether a policy is rational[ly] based on 'any reasonably conceivable state of facts.'"  See id. (quoting F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)).

In this case, Musier's complaint fails to specifically state what facts give rise to the equal protection claim, but the Court liberally construes the complaint to allege that the decision to deny Musier drug treatment based on the fact that he is serving a life sentence violates his right to equal protection.  The Court will dismiss this claim for failure to state a claim upon which relief may be granted because the Court agrees with Defendants that "[t]he DOC policy to

prioritize drug treatment and other programming to inmates soon to be released or paroled is rationally related to the government interest in preparing those inmates for life in the community." (Doc. No. 4 at 23–24.)

### B. Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. Based on the foregoing, the Court will grant Musier leave to file an amended complaint because the Court finds that amendment would be neither inequitable nor futile.

### C. Musier's State Law Claim

Finally, having determined that Musier's deliberate indifference and equal protection claims are subject to dismissal and that leave to amend is appropriate, the Court declines to consider Musier's state law malpractice claim against Defendants MHM, Inc. and Cousins at this time. Because the Court has dismissed Musier's federal claims, it appears that it may be appropriate for the Court to decline jurisdiction over Musier's state law malpractice claim. See 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise jurisdiction" over a state law claim over which it is exercising supplemental jurisdiction if "the district court has

dismissed all claims over which it has original jurisdiction."). Any decision on whether to decline jurisdiction over the state law claim shall be deferred pending the possible filing of an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss, dismiss Musier's complaint without prejudice for failure to state a claim upon which relief may be granted, and grant Musier leave to file an amended complaint. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
